**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ARNELIS MEJIAS : | |
| 611 N. 5th Street : | |
| Camden, NJ 08102 : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | No. _____ |
| v. : | |
| : | |
| BRANDPOINT SERVICES, INC., d/b/a : | |
| BRANDPOINT SERVICES : | |
| 220 Lake Drive East, Ste. 215 : | **JURY TRIAL DEMANDED** |
| Cherry Hill, NJ 08002 : | |
| and : | |
| RHOMBUS SERVICES, LLC : | |
| 220 Lake Drive East, Ste. 215 : | |
| Cherry Hill, NJ 08002 : | |
| and : | |
| MICHAEL HERSH : | |
| 220 Lake Drive East, Ste. 215 : | |
| Cherry Hill, NJ 08002 : | |
| Defendants. : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Arnelis Mejias, (hereinafter referred to as "Plaintiff"), by and through her

undersigned counsel, hereby avers as follows:

### I.  Introduction

1.     Plaintiff has initiated this action against Michael Hersh, Brandpoint Services, Inc.

and Rhombus Services, LLC (hereinafter referred to collectively as "Defendants") for violations

of the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, *et. seq*.), the Fair Labor

Standards Act ("FLSA"), and the New Jersey Law Against Discrimination ("NJ LAD"), among

other applicable law(s). In sum, Plaintiff asserts wrongful termination from her employment and

the failure to pay her properly while employed. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## II.     <u>Jurisdiction and Venue</u>

2.      This action is initiated pursuant to the Family and Medical Leave Act ("FMLA") and the Fair Labor Standards Act ("FLSA"). This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

3.      The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4.      Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III.     <u>Parties</u>

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult with an address as set forth above.

7.      BrandPoint Services, Inc. ("Defendant BPS") is a licensed general contractor providing facility services for commercial clients throughout the United States. BPS manages facility maintenance, remodeling projects, refresh programs, and other construction.

8.      Rhombus Services, LLC ("Defendant RS") is a business entity performing the same or similar work, services, and projects as Defendant BPS. Both Defendants to this lawsuit are properly considered a single, joint and/or integrated employer for the purposes of this lawsuit because *inter alia*:

(1) Defendants BPS and RS are in essence the exact same enterprise and organization;

(2) Defendants merely created a different corporate identity for the New Jersey office / location and a separate corporate identity for the Pennsylvania location (potentially for taxation reasons, among others). Defendants operate as a single enterprise in all respects from 2 physical locations in Trooper, Pennsylvania and Cherry Hill, New Jersey;

(3) Defendants use the same employees, management, and resources to operate both locations doing business under 2 different names, among other potential fictitious business names;

(4) Defendants advertise publicly for both entities and locations doing the same business on the same social media or website platform(s);

(5) Defendants are both registered to the exact same address publicly in Cherry Hill, New Jersey;

(6) Plaintiff's payroll and other employment documentation was interchangeably from both Defendants; and

(7) Plaintiff understood while employed she was an employee of both Defendants at any given time.

9.      Upon information and belief, Defendants comprise a single, integrated operation and overlap in management, operations, advertising and employees such that they are properly considered Plaintiff's joint, single and/or integrated employer. The above recitation of overlap in

operations should be construed solely as examples, not an all-inclusive list of integrated involvement.

10.     Michael Hersh ("Defendant Hersh") is an owner, CEO and primary manager of Defendants. Defendant Hersh orchestrated the unlawful actions against Plaintiff as outlined in this lawsuit.

11.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

### IV.     Factual Background

12.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.     Plaintiff was initially employed with Defendants in September of 2019, but Defendants misclassified and treated Plaintiff as a 1099-contractor.

14.     After an approximate 4-month *trial or probationary period*, Plaintiff was converted to a direct (W-2) employee by Defendants (or in other words, placed on lawful payroll).

15.     Plaintiff was at all relevant times a full-time worker performing the role of Project Assistant (pre-W2 and post-W2).

16.     Defendants operate jointly from 2 separate locations, Trooper Pennsylvania, and Cherry Hill, New Jersey. Plaintiff was an employee working for Defendants from Cherry Hill, New Jersey (and she also resided in New Jersey in the surrounding area).

17.     Plaintiff was directly supervised by Jimaine Harmon, a Lead Project Assistant. And Plaintiff was also supervised by Paul Wright, Vice President of Operations – Construction.

Defendant Hersh however oversaw all aspects of operations, payroll, and Plaintiff's termination from employment.

18.     Defendants have a wholesale unlawful practice, policy and custom of having individuals work as "contractors" when in fact under local, state, federal, DOL and IRS regulations or guidance - - such individuals are properly and functionally "employees." Thus, Defendants *knowingly and intentionally* misclassify "employees" as "contractors" at the commencement of their employment in violation of numerous laws (under the guise of a probation or trial period of employment).

19.     From time of hire as a contractor (in September of 2019) through termination from employment (on August 6, 2021), Plaintiff was in total employed with Defendants for approximately 2 years.

20.     In January of 2020, when Plaintiff was lawfully converted to payroll of Defendants, Plaintiff continued in her same role, had the same management, and continued in her full-time job in all respects (as she had at all times been an "employee" anyway). Again, Defendants have an unlawful custom of misclassifying employees across-the-board intentionally as some sort of probationary period (a nationally recognized unlawful business practice).[1]

21.     As of early 2020, and through termination of employment, Plaintiff was paid by way of salary. Plaintiff did not receive additional income for working more than 40 hours per week, including any overtime compensation.

22.     From early 2020 through termination, Plaintiff often worked very substantial overtime (well in excess of 40 hours per week). Defendants *continued* their unlawful pattern and practice of flouting state and federal laws (as to payroll and employee classification) by failing to

_____

[1] Plaintiff was substantially harmed by Defendant's illegal contractor classification, as she had substantial unnecessary tax consequences as a result.

pay Plaintiff overtime compensation for nearly 1.5 years of her employment (preceding her termination).

23.     Plaintiff often worked up to 10 hours of overtime per week, which was not compensated by way of straight time or time and one half per hour. Defendants have no plausible or feigned arguments that Plaintiff's role or job was somehow exempt from overtime compensation.

24.     Plaintiff's job entailed her reviewing e-mails, entering work orders, data entry, processing billing, closing accounts, and other routine duties expected of a low-salaried employee performing clerical and processing work. She lacked any meaningful discretion, did not manage employees, and she did not make any policy-related decision for Defendants' operations.[2] Plaintiff performed a non-exempt role for Defendants and was not paid for substantial overtime worked each week.

---

[2] To the extent Defendants attempted to couch Plaintiff's work as mostly bookkeeping, she would still be entitled to overtime pay. *See e.g. See also e.g. Ebert v. Holiday Inn*, 2014 U.S. Dist. LEXIS 12368, at *42 (S.D.N.Y. 2014)(granting summary judgment in FLSA case for Plaintiff as it is well established bookkeepers are non-exempt and entitled to overtime); *Friou v. L.E. Coppersmith Inc*., 1998 U.S. Dist. LEXIS 15062, at *12 (S.D. Tex. 1998)(granting summary judgment to plaintiff under FLSA explaining mailing, data entry, and basic accounting or bookkeeping is, as a matter of law, a non-exempt job); *Brock v. Nat'l Health Corp*., 667 F. Supp. 557, 568 (M.D. Tenn. 1987)(The failure to pay staff accountants, bookkeepers, and accounting clerks overtime warranted liquidated damages as they do not meet any overtime exemption); *Jarrett v. ERC Props*., 211 F.3d 1078, 1082 (8th Cir. 2000)(affirming verdict in favor of plaintiff for performing duties similar to a bookkeeper under the FLSA and mandating an award of liquidated damages). To the extent Defendants attempted to assert Plaintiff communicated with employees at job sites in some sort of dispatching capacity, Plaintiff would still be entitled to overtime. *See Marshall v. National Freight, Inc*., 1979 U.S. Dist. LEXIS 9989 (D.N.J. 1979)(dispatcher cannot meet executive exemption and held not to meet administrative exemption); *Sehie v. City of Aurora*, 432 F.3d 749 (7th Cir. 2005)(summary judgment granted for dispatcher as to FLSA claims); *Iaria v. Metro Fuel Oil Corp*., 2009 U.S. Dist. LEXIS 6844 (E.D. N.Y. 2009); *Alvarez v. Key Transp. Transp. Svc. Corp*., 541 F. Supp. 2d 1308 (S.D. Fla. 2008); *Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005)(dispatcher is clearly not exempt from overtime requirements).

25.     What Plaintiff is owed *as a matter of right* from non-payment during her employment does not take into consideration her "automatic" entitlement to "liquidated damages."[3] Plaintiff is entitled to **double** her unpaid overtime compensation.

26.     Plaintiff is *also* entitled <u>mandatory</u> legal fees and other applicable damages (such as costs and interest) under state and federal law(s). *See* 29 U.S.C. § 216(b)(a prevailing plaintiff "shall" be entitled to attorney's fees).

27.     In addition to repeatedly violating wage and employee-classification laws, Defendants recklessly and knowingly violate anti-discrimination laws with respect to medical leave, disability accommodation, and other employee protections. Defendants do not even appear to make any effort to comply with rudimentary aspects of employment laws.

28.     Plaintiff's last physical day of work with Defendants was on or about June 18, 2021. She informed Defendants' management that she needed a medical leave. Plaintiff's medical leave was due to abdominal problems, cramping, anticipated surgery, and other health complications, such as depression.

---

[3] *See e.g. <u>Solis v. Min Fang Yang</u>*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *<u>Gayle v. Harry's Nurses Registry, Inc.</u>*, 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *<u>Haro v. City of Los Angeles</u>*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *<u>Chao v. Barbeque Ventures, LLC</u>*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *<u>Chao v. Hotel Oasis, Inc.</u>*, 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *<u>Lockwood v. Prince George's County</u>*, 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *<u>Uphoff v. Elegant Bath, Ltd.</u>*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *<u>Nero v. Industrial Molding Corp.</u>*, 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

29.     Plaintiff provided Defendants with a doctor's note identifying that she would be out of work **until August 6, 2021** on medical leave.

30.     Within roughly 6 weeks into Plaintiff's medical leave and right before she expected to resume working, Plaintiff was informed she was being "laid off." Plaintiff was deemed terminated by Defendant August 6, 2021 (in the same timeframe in which her doctor had indicated her need for medical leave would cease). Hence, Plaintiff was unable to resume working due to her abrupt and unexpected termination from employment.

31.     Plaintiff had been requesting FMLA paperwork from Defendants, but Defendants' management literally lied to her and told her that she was not eligible for FMLA <u>if</u> she was going to file for short-term disability insurance. The FMLA is just federal job protection that is given <u>conterminously</u> with disability insurance payments, and they are supposed to be paid and given simultaneously by law. Stated another way, all companies offer both disability insurance and FMLA (as FMLA is mandated by federal law and state insurance is mandated under state law).

32.     On August 6, 2021, Plaintiff memorialized to Defendants' owner exactly what transpired along with her complaint of discrimination. Therein, she e-mailed:

> Hello Mike,
>
> I am on medical leave, I should not be stressing about losing my job. All I wanted was to get on the family medical leave and disability. Not to be fired. You called me once and said you would call me the next day and never received a call so I asked Jimaine if you should me the papers for the family leave and instead, I receive an email stating I am laid off? You asked me to choose between the family medical leave or disability because I couldn't have both? That is not right.
>
> *See* Friday, August 6, 2021 e-mail from Plaintiff, at 6:47 PM.

33.     Not a single manager from Defendants (nor Defendant Hersh) objected to or denied Plaintiff's recitation of events and discriminatory treatment.

34.     Defendants violated FMLA regulations, which included but were not limited to:

- Failing to provide Plaintiff with required <u>written</u> eligibility notifications of her FMLA rights within 5 days from being him taking medical leave;[4]

- Failing to provide Plaintiff with <u>written</u> FMLA designation notices within 5 days from her being on medical leave;[5]

- Failing to provide Plaintiff with required <u>written</u> rights and responsibilities notices within 5 days from her being on medical leave;[6] and

- Failing to provide <u>written</u> FMLA designation notices for a leave.[7]

35.     Plaintiff, an eligible employee for FMLA leave, was terminated wherein Defendants did not abide by FMLA regulations, did not provide required notices, and she was not mandatorily reinstated per FMLA regulations for any employee utilizing less than a 12-week medical leave. There is simply no question Defendants unequivocally terminated Plaintiff in violation of the FMLA.

36.     Plaintiff was denied any interactive process, was not followed up with, was stonewalled during her 6-week medical leave, and she was not even given an approximate 1–2 month medical leave accommodation as mandated under applicable anti-discrimination laws (such as the ADA or NJ LAD).[8]

---

[4] *See* 29 CFR § 825.300(b)(1).

[5] *See* 29 CFR § 825.300(b)(2).

[6] *See* 29 CFR § 825.300(c)(1)(i)-(vii)

[7] *See* 29 CFR § 825.300(d)(1)-(6)

[8] The NJ LAD and ADA are interpreted identically with respect to accommodations. *See e.g. Bernhard v. Brown & Brown of Lehigh Valley, Inc*., 720 F.Supp.2d 694 (E.D. PA 2010)(time off from work, even up to 3 months can constitute a reasonable accommodation under the ADA); *Conoshenti v. Public Serv. Elec. & Gas Co*., 364 F.3d 135 (3d Cir. 2004)(federal courts have permitted leave to be a reasonable accommodation under the ADA); *Shannon v. City of Philadelphia*, WL 1065210 (E.D. Pa. 1999)(time off from work for an extended period of time is a reasonable accommodation under the ADA).

37.     Plaintiff was not paid lawfully, is owed a substantial sum of money from unpaid overtime compensation and negative tax consequences, and she was terminated from Defendants discriminatorily and retaliatorily.

38.     Instead of responding to Plaintiff during her medical leave or even acknowledging her discrimination concerns, Defendant Hersh had instead merely sent Plaintiff a severance agreement asking her to waive all possible legal claims against Defendants. In a rush to have Plaintiff sign an unsolicited waiver of all claims:

> (1) Defendants listed the wrong employee in the agreement ("David Asencio") instead of using Plaintiff's name; and
>
> (2) Defendants requested that Plaintiff waive any disability discrimination or wage claims against Defendants.

39.     It is well established that an offer of severance in exchange for a waiver of legal claims contemporaneous to termination is admissible evidence of retaliation and pretext, as Defendants had no policy-based or legal obligation to offer such a waiver of claims or severance.[9]

### Count I
### Violations of Family and Medical Leave Act ("FMLA")
### (Wrongful Termination - Interference & Retaliation)

40.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[9] *See Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012)(holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

41.     Plaintiff was eligible at all times for FMLA coverage, but Defendants: (a) failed to follow notice obligations; (b) failed to provide Plaintiff with FMLA leave; and (c) refused to reinstate her from FMLA-qualifying leave; and (d) terminated Plaintiff in retaliation for seeking FMLA leave.

42.     These actions as aforesaid constitute unlawful retaliation and interference in violation of the FMLA.

### Count II
### Violation of the New Jersey Law Against Discrimination (NJ LAD)
### (Wrongful Termination - Discrimination and Retaliation)

43.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44.     Plaintiff was terminated from Defendants due to: (a) her actual and/or perceived health problems; (b) her record of impairment; and (c) due to her requested medical accommodations (time off from work).

45.     Separate and apart from the aforesaid discrimination and retaliation, Plaintiff was not given a very reasonable medical accommodation (time off from work for a several-month timeframe).

46.     These actions as aforesaid constitute violations of NJ LAD.

### Count III
### Violation of the Fair Labor Standards Act ("FLSA")
### (Non-Payment of Overtime Compensation)

47.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48.     Plaintiff was not paid overtime compensation as explained throughout this lawsuit. These actions / inactions violate the FLSA.

**Count IV**
**Violation of the New Jersey Wage and Hour Law(s)**
**(Non-Payment of Overtime Compensation)**

47.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48.     Plaintiff was not paid overtime compensation as explained throughout this lawsuit. These actions / inactions violate state law(s) in New Jersey.

**Count IV**
**Negligence and Fraud**
**(Misclassification of Plaintiff as Contractor)**

49.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.     Defendants knowingly lied to Plaintiff that she could and should be characterized as a contractor (and non-employee) for the first months of her employment knowing that was unlawful.

51.     Plaintiff relied to her detriment upon such false statements by Defendants because she needed employment, an income, and lacked an understanding of such legal issues.

52.     Defendants, across-the-board, defraud employees resulting in Plaintiff and other employees having substantially higher tax consequences and other loss of contributions or benefits.

53.     Plaintiff suffered harm relying to her detriment on the payroll scheme of Defendants.

54.     In the event that Defendants attempt to feign lack of knowledge of illegality or deny fraudulent behavior(s), Defendants exhibited gross negligence by failing to pay employees such as Plaintiff in accordance with local, state and federal laws (including IRS regulations).

55.     Plaintiff seeks herein unpaid tax consequences and other loss of benefits during her contractor period of employment.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A.     Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or custom(s) of payroll fraud, discrimination, and retaliation and are to be ordered to promulgate an effective policy against such actions and to adhere thereto;

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered the aforesaid unlawful actions at the hands of Defendants until the date of verdict;

C.     Plaintiff is to be awarded punitive or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct, and to deter Defendants or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

By:     _____
        Ari R. Karpf
        3331 Street Road
        Two Greenwood Square, Suite 128
        Bensalem, PA 19020
        (215) 639-0801

Dated: August 30, 2021

14